F I L E D
Clerk
District Court

JUL 02 2021

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>SERVILLANA SORIANO,<br><br>     Defendant. | Criminal Case No. 1:20-cr-00007<br><br><br>**MEMORANDUM DECISION RE: DEFENDANT'S OBJECTION TO THE ADMISSION OF DEFENDANT'S WRITTEN STATEMENT** |

Defendant Servillana Soriano ("Soriano") pleaded not guilty to the sole count in the Second Superseding Indictment for the charge of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371. A jury trial began in this matter on June 29, 2021. At trial, the Government sought to introduce into evidence a sworn statement signed by Soriano on April 17, 2020. It was written in English by a government official, but the contents were interpreted into Tagalog for Soriano by an on-demand telephonic interpreter service, and Soriano then signed the statement. The interpreter was not present to testify at trial. Soriano objected to the admission of the statement as violating the hearsay rule of evidence and the U.S. Constitution's Sixth Amendment Confrontation Clause. Soriano argued her right to confront the interpreter who interpreted the statement. The Government argued that the interpreter functioned as a mere "language conduit" in line with the Ninth Circuit's decision in *United States v. Aifang Ye*, 800 F.3d 395 (9th Cir. 2015). The interpretations therefore were subject to an exception under Federal Rule of Evidence 801(d) and did not violate the Confrontation Clause. The Court agreed with the Government, citing to *Aifang Ye* and *United States v. Nazemian,* 948 F.2d 522

(9th Cir. 1991), and overruled Soriano's objection. The Court now issues this written order memorializing its decision.

## I.     BACKGROUND

A second superseding indictment was issued against Soriano on March 25, 2021. (Second Superseding Indictment, ECF No. 85.) The indictment alleges that between on or about August 1, 2018 and on or about February 11, 2019, Soriano and another person "conspired and agreed with each other . . . to defraud the United States by deceitful and dishonest means, for the purposes of impeding, impairing, obstructing and defeating the lawful government functions of" U.S. Citizenship and Immigration Services "in the fair and objective evaluations of petitions to classify aliens as CW-1 workers." (*Id*. at 1-2.) Soriano is alleged to have committed Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371.

Federal government officials interviewed Soriano on two separate occasions. On March 27, 2020, Homeland Security Investigations Special Agent Frederic Jonas ("Special Agent Jonas") and Task Force Officer Cristin Duenas interviewed Soriano where she was advised of her rights. Soriano met with Special Agent Jonas once more on April 17, 2020 where she was presented with a written statement prepared by Special Agent Jonas. The statement detailed Soriano's background, her activities with RES International, LLC, and the process in which she and others submitted a CW-1 petition for the benefit of three individuals. In particular, she "agreed to petition" these individuals "as janitors and cleaners," but indicated she would need certain paperwork including a certificate of employment. (Government's Ex. 3, ¶ G.) According to Soriano, a person by the name of Halim Khan told her that she "didn't have to provide them with jobs as RES INTERNATIONAL, LLC. RES

INTERNATIONAL, LLC was merely getting them status to remain in the CNMI and they would find their own work." (*Id*. ¶ H.) She then submitted all documents to U.S. Citizenship and Immigration Services "for the purpose of obtaining their CW-1 visa as employees of RES INTERNATIONAL, LLC. I know it was wrong to submit the CW-1 visa petition for persons that were not going to be employees of RES INTERNATIONAL, LLC but I only did so to help Halim Khan."[1] (*Id*.)

Soriano signed the statement under penalty of perjury, with Special Agent Jonas and Task Force Officer Jesse Dubrall as witnesses.

For both meetings, Special Agent Jonas elicited an on-demand telephonic interpreter service from LanguageLine Solutions. Specifically, he sought the assistance of a Tagalog interpreter each time. Two different interpreters were used. During the April 17 meeting, Special Agent Jonas would read the written statement presented to Soriano out loud sentence-by-sentence, and the LanguageLine Solutions interpreter would interpret Agent Jonas's readings from the language of English to Tagalog. Any corrections provided by Soriano would then be interpreted from Tagalog to English, and Soriano would make the corrections on the written statement and initial the change. Although the written statement did not reflect verbatim declarations from Soriano's March 27 interview, Special Agent Jonas would read each sentence out loud and the LanguageLine interpreter would interpret his readings out loud in Tagalog for Soriano. Furthermore, in the April 17 written statement, Special Agent Jonas intentionally incorporated errors—without Soriano's knowledge—to verify the accuracy of the interpretation. Soriano corrected all errors incorporated by Special Agent Jonas. Ultimately, Soriano

---

[1] Soriano indicated that Halim Khan is "an acquaintance" of her husband.

would verify each sentence and sign her initials next to each paragraph of the written statement.

At trial, the Government sought to introduce the April 17 written statement as evidence during Special Agent Jonas' testimony. Soriano objected on hearsay grounds and argued that the statement does not qualify for an exception under Federal Rule of Evidence 801. In addition, the Government's failure to provide the interpreter as a witness violated the Confrontation Clause of the U.S. Constitution's Sixth Amendment. The Court overruled the objection.

## II.    LEGAL STANDARD

### A.  Hearsay

The Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A "declarant" is the person who made the statement. *Id*. at 801(b). Hearsay statements are inadmissible, Fed. R. Evid 802, unless they fall within an exception found in Rule 801(d) or an exemption found in Rules 803, 804, 807.

There are two categories of exceptions found in Rule 801(d)(2)—prior statements of a witness and party-opponent statements. Fed. R. Evid. 801(d)(1), (2). The party-opponent exception is the relevant exception here. There are five ways that a statement can qualify as a party-opponent statement: (A) statements made by the party-opponent in an individual or representative capacity; (B) statements of another that have been adopted by the party-opponent; (C) statements made by a person who was authorized to speak on behalf of the party-; (D) statements made by an agent or employee of the party-opponent; and (E) statements made by a defendant's coconspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(A)-(E). If a statement falls within one of the five categories,

it is, by definition, not hearsay.

Rule 805 applies when a party seeks to introduce hearsay-within-hearsay. Fed. R. Evid. 805. Rule 805 mandates that "each part of the combined statements conform with an exception to the rule against hearsay." *Id*. In other words, the proponent must separate out the individual hearsay statements and identify a Rule 801(d) exception or a Rule 803, 804, or 807 exemption that applies to each statement. If an exception or exemption cannot be found for each level of hearsay, then the statement will be excluded as inadmissible hearsay. *See United States v. Canales-Fuentes*, 176 F. App'x. 873, 876 (9th Cir. 2006) (hearsay-within-hearsay statement inadmissible without an exception).

## B. Confrontation Clause

The Confrontation Clause prohibits admission of testimonial hearsay in criminal cases unless the declarant is unavailable and the defendant has been afforded a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In the Ninth Circuit, "[w]here an interpreter is a mere language conduit and the statements are viewed as the defendant's own . . . they do not constitute inadmissible hearsay and their admission does not violate the Confrontation Clause." *United States v. Boskovic*, 472 F. App'x. 607, 608 (9th Cir. 2012). "A defendant and an interpreter are treated as identical for testimonial purposes if the interpreter acted as a 'mere language conduit' or agent of the defendant." *United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012). In *United States v. Nazemian*, the Ninth Circuit established a four-factor test for determining whether an interpreter adds an additional layer of hearsay: (1) which party supplied the

interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. 948 F.2d 522, 526 (9th Cir. 1991). Whether a translated statement is fairly considered the statements of the speaker is considered on a case-by-case basis. *Id*. at 527.

## III. DISCUSSION

At issue is whether Soriano's signed written statement is subject to a hearsay exception. If the LanguageLine Solution interpreter qualifies as a language conduit, then Soriano's written statement may be properly attributed to her as the declarant, not the interpreter's. If not, the absence of the interpreter to be confronted by Soriano at trial, or otherwise be subject to cross-examination, would violate her constitutional Sixth Amendment right.

The U.S. Supreme Court has never addressed the interplay between the Confrontation Clause and a party's statements interpreted and translated by another person. The Ninth Circuit has acknowledged as much but has stated that none of the Supreme Court's decisions following *Crawford v. Washington* "are in direct conflict with our holding in *Nazemian*." *Orm Hieng*, 679 F.3d at 1140. In fact, as recently as 2015, the Ninth Circuit upheld this Court's determination in *United States v. Aifang Ye* that translated statements without calling the translator as a witness would not implicate the Confrontation Clause if the translator was acting as a language conduit. *See* 800 F.3d 395. There, the court concluded that the on-demand telephonic interpreter service personnel acted as language conduits. The translated statements presented at trial were subject to a hearsay exception and therefore did not violate the Confrontation Clause.

At trial in the case at bar, the Court went through the four factors outlined in *Nazemian* finding that (1) the Government provided the interpreter is not dispositive; (2) no motive to mislead is readily discernible; and addressing (3) and (4) together, there is sufficient indicia of accuracy in the written statement to establish both factors. The Court fleshes out each factor in turn below.

**A. Party Providing the Interpreter**

"Other circuits have not held that the fact that the interpreter is provided by the government, in and of itself, is dispositive of the agency question." *Nazemian*, 948 F.2d at 527. At least one court has determined that where the Government did not hand-select the interpreter and did not have a prior relationship with the Government official, that the factor did not "weigh heavily in favor of Defendant." *United States v. Santacruz*, 2010 WL 3491518, at *3 (E.D. Cal. Sept. 2, 2010), *aff'd* 480 F. App'x. 441 (9th Cir. 2012). This is true even if the interpreter was a government employee themselves. *Id*. In *Ye*, the Court determined that the on-demand telephonic interpreter provided by the Government "does weigh in [the defendant's] favor[.]" *Ye*, 800 F.3d at 401. Importantly, however, the Ninth Circuit reiterated "we have held that this factor is 'never dispositive.'" *Id*. (citing *United States v. Romo-Chavez*, 681 F.3d 955, 959 (9th Cir. 2012)).

Similarly, here, the Government used an on-demand telephonic interpreter from LanguageLine Solutions to interpret the written statement read to Soriano in Tagalog and to convey Soriano's corrections in English to Special Agent Jonas. Although this factor does weigh in favor of Soriano, the Government did not hand-select the interpreter, and Soriano has not produced any evidence establishing that the individual interpreter had a prior relationship with the Government agents. Thus, the Court does not find that this factor is dispositive.

### B. Motive to Mislead or Distort

Where the defense does not demonstrate motive to distort the translation, a "conclusory allegation of bias [is] insufficient to prevent a finding that a translator was a language conduit." *Santacruz*, 2010 WL 3491518, at *3; *see Romo-Chavez*, 681 F.3d at 960 (public servants are not "inherently biased.") Here, there is nothing to suggest that the interpreter is inherently biased or that he or she would otherwise have a motive to mislead or distort the interpretation. Consequently, the Court does not find that this factor supports finding a violation of the Confrontation Clause.

### C. Language Skill and Corroboration

The critical issue Soriano raises revolves around the following statement "I know it was wrong to submit the CW-1 visa petition for persons that were not going to be employees of RES INTERNATIONAL, LLC but I only did so to help Halim Khan." Soriano argues that she did not render that statement to Special Agent Jonas—or to anyone. To support her position, Soriano referenced notes by another agent present during the interview that stated she did not know her conduct was unlawful. However, Special Agent Jonas at trial testified that these notes referenced a separate matter, not about petitioning for employees that were never going to actually work for RES INTERNATIONAL, LLC. In addition, the Government submits that Soriano had the opportunity to modify the statements to accurately reflect her intent. The fact that she did not correct this particular statement is reflective of her intent. The Court agrees with the Government, citing to *Aifang Ye*, and addresses the third and fourth factor together to reach the conclusion that the interpreters acted as a conduit in this instance.

"Whether an individual speaks a foreign language with sufficient fluency to act as a translator

in a given situation is a question of fact." *Romo-Chavez*, 681 F.3d at 955. In *Nazemian*, the court determined that "the fact that the interpreter continued in that role over a prolonged period and multiple meetings suggests that the translation must have been competent enough to allow communication between the parties." *Nazemian*, 948 F.2d at 528. Furthermore, in that case, the court determined that there was nothing to suggest inaccurate translations: "Again, *Nazemian*, points to no specific occasions where Agent Eaton's testimony repeating the translated statement did not accurately reflect what she said to him." *Id*. Similarly, in *Ye*, the government officials "checked the accuracy of the translation by asking the translators to have [the defendants] confirm line-by-line read-backs of what they had said. To test the accuracy of the translation, the [government officials] inserted intentional inaccuracies in the read-backs, which [the defendants] identified and corrected each time. This indicates that the translators' work was accurate." *Ye*, 808 F.3d at 402. As for the fourth factor regarding the defendant's subsequent conduct, "[t]he fourth factor examines whether a translation is corroborated by the declarant's subsequent actions. If so, the translation becomes more reliable." *Santacruz*, 2010 WL 3491518, at *3.

Looking at the totality of the circumstances, there is enough corroborating evidence to establish the accuracy of the interpretation of Soriano's statements. These include the fact that Soriano manifested numerous edits to her written statement including Arnold Reyes' name, Halim Khan's position at Kanoa Resort, and the cost of fees for CW-1 petitions. Soriano was read out loud every sentence in English, which was then interpreted by a Tagalog interpreter, and she adopted the written statements with her initials. Furthermore, there was separate trial testimony by another witness, Arnold Reyes, who corroborated the contents of Soriano's statement. These are all indicia of the accuracy and

reliability of Soriano's April 17 written statement. The interpreter acted as a mere language conduit, and therefore based on Federal Rule of Evidence 801(d)(2)(B), her written statement qualifies as one that she "adopted or believed to be true." No Confrontation Clause issue exists.

Soriano was given ample opportunity to cross-examine Special Agent Jonas concerning the April 17 written statement, and the Court finds the jury in the best position, as fact-finders, to determine how much weight to ascribe to Soriano's statements.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that the interpreter acted as language conduit and that the April 17, 2020 written statement falls under the hearsay exception in Federal Rule of Evidence 801(d)(2)(B), and therefore not violations of the rules of evidence or the Confrontation Clause. Soriano's objection is therefore OVERRULED.

IT IS SO ORDERED this 2nd day of July, 2021.

_____
RAMONA V. MANGLONA
Chief Judge